11 F.3d 136
 UNITED STATES of America, Plaintiff-Appellee,
United States of America, ex rel. Joanne Neher, Plaintiff-Appellant,
v.
NEC CORPORATION f/k/a Nippon Electric Co.; NEC Overseas
Marketing LTD. f/k/a NEC Overseas Market
Development Co. Ltd., Defendants.
 No. 92-2854.
 United States Court of Appeals, Eleventh Circuit.
 Dec. 15, 1993.
As Amended Jan. 12, 1994.
 
 Coralyn G. Goode, Gerald H. Werfel, John J. O'Brien, Arent Fox Kinter Plotkin & Kahn, Washington, DC, for Williams.
 Michael F. Hertz, Joan E. Hartman, U.S. Dept. of Justice, Washington, DC, for USA.
 Kendell W. Wherry, Asst. U.S. Atty., Orlando, FL, Tamra Phipps, Asst. U.S. Atty., Tampa, FL, for plaintiff-appellee.
 Douglas N. Letter, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.
 Appeal from the United States District Court for the Middle District of Florida.
 Before BIRCH, Circuit Judge, CLARK, Senior Circuit Judge, and HOEVELER*, Senior District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 The United States of America, as appellee in the present case, moves to dismiss the appellant's qui tam action brought under the False Claims Act ("FCA"), 31 U.S.C. Sec. 3729 et seq. Because we find that a qui tam action survives the death of the plaintiff-relator, we DENY the appellee's motion to dismiss and GRANT the appellant's motion for substitution of a personal representative. This is an issue of first impression in the federal appellate courts.
 
 I. BACKGROUND
 
 2
 The appellant, Arthur Williams, brought a qui tam action under 31 U.S.C. Sec. 3730 against the appellee, the United States of America, to recover a portion of a settlement procured by the government as a result of information provided by Williams. After dismissal of his action by the district court, Williams died while the present appeal was pending. The United States immediately moved for dismissal of Williams's action, asserting that a qui tam action abates with the death of the plaintiff-relator. Williams's estate, on the other hand, moved for substitution of his personal representative as plaintiff-appellant, arguing that the qui tam action survives Williams's death.
 
 II. DISCUSSION
 
 3
 In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law. James v. Home Constr. Co. of Mobile, 621 F.2d 727, 729 (5th Cir.1980). Here, neither the FCA nor its legislative history reveals the drafters' intent with respect to survivability. We thus turn to federal common law for guidance.
 
 
 4
 The parties agree that resolution of the survivability issue depends on whether the recovery is deemed "remedial" or "penal." A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public. See In re Wood, 643 F.2d 188, 190-91 (5th Cir.1980). It is well-settled that remedial actions survive the death of the plaintiff, while penal actions do not. Schreiber v. Sharpless, 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L.Ed. 65 (1884); Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 876 (11th Cir.1986); James, 621 F.2d at 730. In deciding whether a statute is penal or remedial, we must examine three factors: " '(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.' " Wood, 643 F.2d at 191 (quoting Murphy v. Household Fin. Corp., 560 F.2d 206, 209 (6th Cir.1977)).
 
 
 5
 Williams cites numerous cases holding that the FCA is a remedial statute. Each of these cases, however, deals with the issue of survivability following the defendant's death. It is manifest that the FCA is remedial with respect to the government's recovery against the defendant. For purposes of the present appeal, however, we must decide if the FCA is remedial or penal with respect to the recovery of the qui tam relator.[1] Application of the three-prong test from Wood persuades us that the FCA's qui tam provisions are remedial, rather than penal.
 
 
 6
 First, the purpose of the FCA is to redress individual wrongs, rather than wrongs to the general public. The government's recovery against a FCA defendant is intended to compensate the government for damages suffered as a result of the defendant's actions. E.g., United States ex rel. Marcus v. Hess, 317 U.S. 537, 551-52, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943). The United States, however, argues that this reasoning does not apply to a qui tam relator. The government contends that the action of a qui tam relator is based, not on any loss suffered by the relator himself, but entirely on the loss suffered by the government.
 
 
 7
 We disagree. We believe that a qui tam relator suffers substantial harm and the qui tam provisions of the FCA are intended to remedy that harm. First, a qui tam relator can suffer severe emotional strain due to the discovery of his unwilling involvement in fraudulent activity. Moreover, the actual or potential ramifications on a relator's employment can be substantial. As several courts have recognized, qui tam relators face the Hobson's choice of "keeping silent about the fraud, and suffering potential liability (and guilty consciences), or reporting the fraud and suffering repercussions, some as extreme as dismissal." United States ex rel. Robinson v. Northrop Corp., 824 F.Supp. 830, 835 (N.D.Ill.1993); accord United States ex rel. Burch v. Piqua, 803 F.Supp. 115, 119 (S.D.Ohio 1992). Finally, the relator can suffer substantial financial burdens as a result of the time and expense involved in bringing a qui tam action. We thus believe that the FCA's qui tam provisions are intended to redress wrongs suffered by individual relators such as Williams, rather than the general public.
 
 
 8
 Consideration of the second factor from the Wood analysis also highlights the remedial nature of the FCA's qui tam provisions. The United States cannot seriously contend that the recovery under the FCA runs only to the general public. Instead, the recovery runs to the United States Government and the qui tam relator as compensation for damages. The recovery of a qui tam relator is intended to remedy the harm he suffered in several ways: by distancing the relator from the fraud and rewarding him for his involvement in the government's fight against unlawful activity; by compensating the relator for any harm he suffered with respect to his employment; and by compensating the relator for the substantial time and expense involved in bringing a qui tam action. We thus believe that the FCA's qui tam provisions are intended to remedy, at least in material part, the harm suffered by the individual relator, such as Williams, rather than the public at large. Like the government's recovery, the recovery of the qui tam relator runs directly to the injured party as compensation for specific damages resulting from the defendant's wrongful activities.
 
 
 9
 Finally, we cannot say that the recovery authorized by the FCA is disproportionate to the harm suffered by a relator. The Supreme Court recognized that the government's recovery under the FCA is proportionate to the harm suffered as a result of fraud: "We think the chief purpose of the statutes here was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." Marcus, 317 U.S. at 551-52, 63 S.Ct. at 388. Similarly, we cannot say that the recovery sought by a relator is disproportionate to the harm typically suffered as a result of the defendant's fraudulent conduct.
 
 
 10
 The harm suffered by a relator can be quite substantial, and the FCA's qui tam provisions are intended to remedy this harm. Because the harm suffered by a qui tam relator is often the type that is difficult or incapable of measurement, Congress chose to compensate these individuals by awarding them a percentage of the government's recovery. The relator's recovery varies "depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. Sec. 3730. The fact that the relator's award is proportionate to the harm he suffered as a consequence of the action further demonstrates the statute's remedial purpose.
 
 
 11
 The foregoing analysis convinces us that the FCA's qui tam provisions are remedial, not penal. Our conclusion is strengthened by another factor. The defendant's payment under the FCA remains the same regardless of whether the relator decides to file a qui tam action. The relator's recovery is merely a portion of the government's recovery. We cannot characterize these provisions as penal when the relator's decision to intervene in no way "punishes" the defendant. The FCA's qui tam provisions do not act as a penalty; rather, they provide incentive to government "whistleblowers" and compensate such individuals for their time and trouble.
 
 
 12
 Finally, we believe that the underlying purpose of the FCA will best be served by allowing qui tam actions to survive the death of the relator. One of the FCA's primary purposes is to encourage individuals knowing of government-related fraud to come forward with that information. S.Rep. No. 99-345, 99th Cong., 2d Sess. 2 (1986), U.S.Code Cong. & Admin.News 1986, p. 5266. By minimizing the obstacles faced by qui tam plaintiffs, we believe that this type of government "whistleblowing" will be further encouraged.
 
 III. CONCLUSION
 
 13
 The structure and underlying policy of the FCA convince us that the statute's qui tam provisions are remedial in nature. The purpose of the qui tam provisions is to provide individuals with incentive to inform the government of fraudulent activity and to compensate such relators for the time and expense of coming forward with such information. The qui tam provisions are remedial and in no way act to penalize the FCA defendant. We therefore hold that a relator's qui tam action survives his death.
 
 
 14
 The appellee's motion to dismiss this action as moot is DENIED.
 
 
 15
 The appellant's motion for substitution of personal representative, requesting that Joanne Neher, as the Personal Representative of the Estate of Arthur P. Williams, be substituted as plaintiff-appellant in the place of Arthur P. Williams as plaintiff-appellant is GRANTED.
 
 
 
 *
 Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 We agree with the United States that a statute can be remedial as to one party, yet penal as to another. See Huntington v. Attrill, 146 U.S. 657, 667-68, 13 S.Ct. 224, 227-28, 36 L.Ed. 1123 (1892)