DYK, Circuit Judge,
concurring in the result and dissenting from the majority opinion.
This case presents a simple question: whether a claim for compensation for a vaccine-related injury under the National Childhood Vaccine Injury Act (the “Vaccine Act”), 42 U.S.C. §§ 300aa-10, to -34 (2000), survives the death of a petitioner. Without any basis in the statutory text, the majority holds that the Vaccine Act provides for survivorship. In my view, the Vaccine Act is entirely silent as to issues of survivorship. The majority’s approach is contrary to established authority recognized explicitly in eight circuits, and implicitly by the Supreme Court, that surviv-orship is determined as a matter of federal common law when the statute does not explicitly address the question. The majority offers no reason for ignoring this established rule in favor of an untenable construction of the Vaccine Act.
I
This issue arises against a background of pervasive concern about the survival of personal injury claims. At common law, personal injury claims, unlike claims for injury to property, did not survive, but abated upon the death of either the plaintiff or the defendant. See, e.g., Restatement (Second) of Torts § 900(a) & cmt. a. (1979); see also Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L.Rev. 1043, 1044 (1965). The modern approach, however, has been to reject the common law rule and allow survivorship. See W. Page Keeton et ah, Prosser and Keeton on The Law of Torts § 126 (4th ed.1984).
The majority goes to great lengths to demonstrate that the Vaccine Act does not preclude survivorship, and I agree.[1] How *1325 ever, in my view, the majority entirely fails to explain where or how the Vaccine Act affirmatively provides for survivorship. It is well established that in construing a statute, a court may not “draw on some unexpressed spirit outside the bounds of the normal meaning of’ the words used in the statute. Addison v. Holly Hill Fruit Prods., 322 U.S. 607, 617, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944); see also Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (rejecting construction of statute that “would add a gloss to the operative language of the statute quite different from its commonly accepted meaning”).[2] The majority opinion does not identify any statutory text that could be read to provide a right of survivorship.
The only statutory text that could possibly be read to provide for survivorship of some Vaccine Act claims is the act’s standing provision:
[A]ny person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the [National Vaccine Injury Compensation] Program.
42 U.S.C. § 300aa-ll(b)(l)(A). Any construction of section 300aa-ll(b)(l)(A) to provide affirmatively for survivorship of injury claims, however, would be plainly incorrect.
First, the text of section 300aa-11(b)(1)(A) simply does not address whether a claim for a vaccine related injury survives and can be pursued by the estate of the injured person. The standing language provides that the legal representative of a person “who has sustained a vaccine-related injury” may file a petition for compensation only if the injured person “is a minor or is disabled.” This language does not address whether a legal representative of a deceased, previously-injured person may file a petition for compensation. The standing provision also authorizes “the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table” to bring “a petition for compensation.” This provision of section 300aa-ll(b)(l)(A) clearly refers to a claim for the death benefit provided in section 300aa-15(a)(2) and does not authorize any action with respect to a person who has suffered a vaccine-related injury before death. In addition, there is not a shred of legislative history that would support a construction of section 300aa-11(b)(1)(A) as explicitly providing for sur-vivorship of vaccine-related injury claims, nor does the majority claim that any exists.
Second, it is significant that section 300aa-ll does not use language similar to *1326 that used in other federal or state statutes that do provide for survivorship. Those statutes use terminology such as “not abate” or “survive” to preserve causes of action after death. For example, Congress has explicitly provided that any “civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants.” 28 U.S.C. § 2404 (emphases added). Similarly, the Federal Employers’ Liability Act, in providing for survivorship, states:
Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee’s parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.
45 U.S.C. § 59 (emphasis added).[3] The vast majority of state statutes also utilize such language. See 3 Stuart M. Speiser & James E. Rooks, Jr., Recovery for Wrongful Death, app. A (4th ed.2005) (collecting state statutes). The Vaccine Act contains no similar language addressing the issue of survivorship.
Third, and perhaps most significantly, a strained interpretation of section 300aa-11(b)(1)(A) to provide for survivorship would create an anomalous, arbitrary, and unfair result that Congress cannot have intended. The language of the Vaccine Act authorizes an action only by “the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table.” 42 U.S.C. § 300aa-ll(b)(l)(A).
As the government points out, if this language were construed to provide for survival, a petitioner’s claim for vaccine-related injury would survive only if the petitioner died from vaccine-related causes, since the language refers only to “the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table.” Id. If the petitioner died of unrelated causes, section 300aa-ll(b)(l)(A) could not be read to provide any standing for the petitioner’s personal representative, and the vaccine-related injury claim would apparently abate. This would leave such a petitioner’s estate no basis for any compensation at all, even though the petitioner would have suffered vaccine-related injuries and associated costs during his or her life. There is no basis in the policy of the Vaccine Act to distinguish, in terms of the availability of compensation for pre-death injury, between a person who suffers a vaccine-related injury and subsequently dies as a result of the vaccination, and a person who suffers the same vaccine-related injury but dies of unrelated causes.[4] Congress cannot possibly have intended *1327 such a result, and nothing in the legislative history suggests that Congress intended this result. It would be a further stretch to imagine that Congress not only intended such a distinction, but chose to embody it in statutory language that purports only to confer standing on a legal representative to seek the statutory death benefit.[5]
Perhaps recognizing that section 300aa-11(b)(1)(A) cannot be read as providing for survivorship, the majority appears to base its finding of survivorship on a negative inference from another provision of the Vaccine Act, section 300aa-15(b), which governs compensation available for so-called pre-Act injuries, that is, those arising from vaccinations administered prior to the 1988 effective date of the Vaccine Act.[6] Maj. Op. at 1318-20. However, the majority plainly misreads this section as providing for survivorship. Like section 300aa-11(b)(1)(A), section 300aa-15(b) does not address the issue of survivorship, and it does not use the language “survive” or “not abate.”
The plain language of section 300aa-15(b) limits the compensation available with respect to vaccinations administered prior to the effective date of the Vaccine Act by imposing a $30,000 cap on the total compensation for pain and suffering, lost wages, and attorneys’ fees, while otherwise making available in pre-Vaccine Act cases all of the same categories of compensation available in post-Vaccine Act cases under section 300aa-15(a): medical expenses, lost wages, pain and suffering, and the statutory death benefit (in addition to reasonable attorneys’ fees, as provided in section 300aa-15(e)). The majority relies heavily on the use of the word “and” in section 300aa-15(b) (referring to injury compensation “and” the death benefit) to reach the conclusion that the same individual may recover both compensation for injury and a death benefit. It then appears to read the same conjunctive language into section 300aa-15(a). Maj. Op. at 1319-20. But section 300aa-15(b), in describing the *1328 types of compensation recoverable, like section 300aa-15(a), obviously refers to the various types of compensation recoverable by the class of individuals entitled to sue, not the compensation recoverable by each individual claimant. This is necessarily the case because individuals still alive cannot be entitled to the death benefit under section 300aa-15(a)(2). Moreover, the right of any individual claimant to recover is governed explicitly by section 300aa-ll, not by section 300aa-15.
This is made clear by section 300aa-15(b) itself. That section refers, with respect to eligibility to receive compensation, back to the standing provision of section 300aa-ll, specifying the amount of “Compensation awarded under the Program to a petitioner under section 300aa-ll of this title for a vaccine-related injury or death.” 42 U.S.C. § 300aa-15(b). Section 300aa-11 governs the right to recovery of the individual claimant. As discussed above, section 300aa-ll tells us nothing about survivorship.
II
Because nothing in the Vaccine Act addresses the issue of survivorship, the issue is properly addressed as a matter of federal common law. “[T]he inevitable incompleteness presented by all legislation means that” it is the “responsibility of the federal courts ... ‘to declare ... rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress.’ ” United States v. Little Lake Misere Land Co., 412 U.S. 580, 593, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973) (quoting Paul J. Mishkin, The Variousness of “Federal Law”: Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L.Rev., 797, 800 (1957)); see also Montana v. United States, 124 F.3d 1269, 1274 (Fed.Cir.1997) (“If the [relevant federal] statutes are silent ... the federal courts must ‘fill the interstices of federal legislation according to their own standards.’ Therefore, if no federal statute supplies the rule of law, the court must determine whether to create federal common law or to incorporate state law as the rule of decision.”) (internal quotation marks and citation omitted) (quoting United States v. Kimbell Foods, Inc., 440 U.S. 715, 727, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)).
The issue of survivorship is among the background legal principles for which judicial gap-filling is appropriate. The Supreme Court has impliedly held,[7] and eight circuits have explicitly held,[8] that federal *1329 common law determines survivorship where the statute is silent as to the issue. Commentators agree. “In some statutes creating a federal right of action Congress provides explicitly that the action will survive the death of a party. In the absence of a provision of this kind the court must look to federal common law.” 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1954 & n. 12 (3d ed.2007) (footnotes omitted and emphases added). Ample authority from the Supreme Court and eight circuits supports this well-established proposition.
For example, in United States v. NEC Corp., 11 F.3d 136 (11th Cir.1993), the original plaintiff, Williams, had brought a qui tarn action against the United States under the False Claims Act, seeking a portion of the recovery the government obtained from the defendant as a result of information he had provided. Id. at 137. The court first determined that “neither the F[alse]C[laims]A[ct] nor its legislative history reveals the drafters’ intent with respect to survivability. We thus turn to federal common law for guidance.” Id. The court held, as a matter of federal common law, that the qui tarn claim survived Williams’ death. Id. at 139. Likewise, courts have applied a similar analysis to conclude that the survival of actions under other federal statutes, for example, the Age Discrimination in Employment Act and the Truth in Lending Act, is governed by federal common law. See, e.g., Smith v. Dep’t of Human Servs., 876 F.2d 832, 834 (10th Cir.1989) (Age Discrimination in Employment Act); Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d 407, 413 (7th Cir.1980) (Truth in Lending Act).
Although widely recognizing that federal common law governs, the courts have not clearly articulated the governing rule with respect to survivorship of personal injury claims under the Vaccine Act or more generally. One option would be to adopt the applicable state law rule. See, e.g., Robertson v. Wegmann, 436 U.S. 584, 590-91, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). However, that option is not appropriate in this case. Although not all “[cjontroversies directly affecting the operations of federal programs ... require resort to uniform rules,” Kimbell Foods, 440 U.S. at 727-28, *1330 99 S.Ct. 1448, the creation of a uniform federal rule is particularly appropriate in cases, such as this, that directly concern “the duties of the Federal Government,” Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 642, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). In this context, the need for uniformity in the vaccine compensation program is also demonstrated because Congress chose to allow adjudication of claims under the program only in the United States Court of Federal Claims, a single, uniform, national court. Resort to state law to determine survival of claims under the Vaccine Act would be inappropriate. See Carlson, 446 U.S. at 23-25, 100 S.Ct. 1468 (finding survival of Bivens claims governed by a uniform federal rule in favor of survival rather than state law); Shyface v. Sec’y of Health & Human Servs., 165 F.3d 1344, 1351 (Fed.Cir.1999) (holding that standard for proof of causation under Vaccine Act must be determined as a uniform federal rule rather than by adopting state law).
Although it is not appropriate to adopt the differing rules of individual states, it is appropriate to follow the approach adopted by the vast majority of states. Nearly every state now provides for survivorship of personal injury claims by statute, rejecting the common law rule that personal injury claims do not survive death. See 3 Speiser & Rooks, supra, app. A; see also Keeton et al., supra, § 126 (“[Vjirtually every state today has some form of survival statute, the exact provisions of which vary but the gist of which is to permit a personal injury action to continue after the death of either the plaintiff or defendant.” (footnote omitted)).
In a closely related context, the Supreme Court has explained that the sweeping rejection by the states of a common law doctrine argues strongly that the common law doctrine should also be rejected as a matter of federal common law. At common law, there was no cause of action for wrongful death. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 380, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In Moragne, the Supreme Court recognized, as a matter of federal common law, a cause of action for wrongful death in federal admiralty jurisdiction. Id. at 409, 90 S.Ct. 1772. The Court held that despite the common law refusal to recognize such a claim, “the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception.” Id. at 393, 90 S.Ct. 1772. Based in large part on the widespread enactment of state statutes creating a cause of action for wrongful death, creation of a similar federal common law action was appropriate. Id. at 390-92, 90 S.Ct. 1772. It is appropriate to follow a similar approach with respect to survivorship of injury claims, since the states by statute have almost uniformly rejected the common law rule that personal injury claims do not survive death. Indeed, it is particularly appropriate to follow the approach of Moragne because the common law doctrines rejecting survivor-ship and wrongful death actions, while distinct, are related both in historical origin and practical consequence. See Malone, supra, at 1044.
A rule in favor of survival is also consistent with the objectives of the Vaccine Act with respect to both compensation of injured individuals and protection of vaccine manufacturers. The Vaccine Act includes an opt-out provision which requires that individuals harmed by a vaccine submit a claim under the vaccine program, but allows a claimant to reject the program award and instead bring a private action *1331 under state law against a vaccine manufacturer or administrator.[9] 42 U.S.C. § 300aa-ll(a)(2)(A). A rule in favor of survivorship of vaccine-related injury claims would preserve the Vaccine Act as an effective substitute for the state tort system. As noted earlier, in all or nearly all states, the state tort system that Congress sought to replace with the vaccine compensation program, for claims of vaccine-related injuries and death, provides for survival of personal actions. A rule in favor of survivorship would harmonize the federal scheme with the state alternative.
I would hold that, because the statutory language does not specify whether claims under the Vaccine Act survive, this issue is properly governed by federal common law, and that claims for vaccine-related injury accruing prior to death survive the death of a claimant. I respectfully dissent from the majority’s refusal to apply well-established law, but concur in the result that allows the estate of this petitioner to recover.[10]

. Unlike the Vaccine Act, some statutes do expressly preclude survivorship, eliminating the need to turn to federal common law to resolve the issue. See, e.g., 38 U.S.C. § 1151; see also Seymour v. Principi, 245 F.3d 1377, 1380 (Fed.Cir.2001) ("[Ijt follows directly from the language of section 1151 that a *1325 claim for disability under section 1151 is extinguished by a veteran's death.”).

. The Supreme Court expressed this principle at greater length in Addison:
We should of course be faithful to the meaning of a statute. But after all Congress expresses its meaning by words. If legislative policy is couched in vague language, easily susceptible of one meaning as well as another in the common speech of men, we should not stifle a policy by a pedantic or grudging process of construction. To let general words draw nourishment from their purpose is one thing. To draw on some unexpressed spirit outside the bounds of the normal meaning of words is quite another.
322 U.S. at 617, 64 S.Ct. 1215.

. This explicit survivorship provision is also incorporated by reference in the Jones Act. See 46 U.S.C.A § 30104(a) (West 2006); see also Gillespie v. U.S. Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) ("There is, of course, no doubt that the Jones Act through § 9 of the FELA, 45 U.S.C. § 59 (1958 ed.), provides for survival after the death of the seaman of ‘(a)ny right of action given by this chapter!]’ ....” (footnote omitted)).

. While not necessary to its result, the majority suggests that if a petitioner secured a judgment for a vaccine-related injury, and subsequently died as a result of the same vaccination, that person's legal representative might not be able to recover the statutory *1327 death benefit because of section 300aa-11(b)(2), which provides that "[o]nly one petition may be filed with respect to each administration of a vaccine.” See Maj. Op. at 1320. This is clearly not the purpose of the single petition rule, which was intended to prevent a petitioner from evading the limitation on compensation for pain and suffering by filing multiple petitions for the same vaccine-related injury. See H.R.Rep. No. 99-908, at 14-15 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6355-56.

. The majority appears to be troubled by the possibility of this anomalous result. It does not rely on section 300aa-l 1(b)(1)(A) as the source of the survivorship right for vaccine-related injury claims, and it explicitly avoids deciding whether a claim for vaccine-related injury would survive the injured person's unrelated death. "We need not decide whether § 300aa-l 1(b)(1)(A) would permit the estate of a person who suffered vaccine-related injuries but died of a non-vaccine-related cause to file a petition for vaccine-related injury compensation. ...” Maj. Op. at 1321.

. Section 300aa-15(b) provides, in relevant part:
Compensation awarded under the Program to a petitioner under section 300aa-ll of this title for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988, may include the compensation described in paragraphs (1)(A) [providing for unreimbursed medical expenses for vaccine injuries] and (2) [providing a uniform death benefit] of subsection (a) of this section and may also include an amount, not to exceed a combined total of $30,000, for—
(1) lost earnings (as provided in paragraph
(3) of subsection (a) of this section),
(2) pain and suffering (as provided in paragraph (4) of subsection (a) of this section), and
(3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section, [sic]

. The Supreme Court long ago implicitly recognized this principle. See Ex parte Schreiber, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884) (applying, in the face of statutory silence, common law rule that penal actions do not survive the death of a party to conclude that action seeking qui tam penalties for an alleged copyright violation did not survive the defendant’s death). The Supreme Court has also used interstitial application of federal common law to allow claims to survive a plaintiff's death. See Carlson v. Green, 446 U.S. 14, 23-25, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).

. See, e.g., United States v. NEC Corp., 11 F.3d 136, 137 (11th Cir.1993) ("In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law.”); Smith v. Dep’t of Human Servs., 876 F.2d 832, 834 (10th Cir.1989) ("The question of the survival of an action grounded in federal law is governed by federal common law when, as here, there is no expression of contrary intent.”); James v. Home Constr. Co. of Mobile, 621 F.2d 727, 729 (5th Cir.1980) (”[T]he question of survival of a federal cause of action has usually been described as a question of federal common law, in the absence of an expression of con *1329 trary intent.”); Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d 407, 413 (7th Cir.1980), overruled on other grounds by Pridegon v. Gates Credit Union, 683 F.2d 182, (7th Cir.1982); Heikkila v. Barber, 308 F.2d 558, 561 (9th Cir.1962) ("[when n]o federal statute makes any provision for the survival of claims ... the question of survival or not must be judged in accordance with the rule at common law.”); Pritchard v. Smith, 289 F.2d 153, 155 (8th Cir.1961) (when a statute "does not deal expressly with the question of survivor-ship ... ‘it is for the federal courts to fashion the governing rule ... according to their own standards.’ ” (quoting Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943))); Bowles v. Farmers Nat’l Bank of Lebanon, Ky., 147 F.2d 425, 430 (6th Cir.1945) (stating that to determine survival of a statutory cause of action ‘‘[i]n the absence of an Act of Congress, the federal courts are entitled to apply the proper rules of federal law under their own standards”); Sullivan v. Associated Billposters & Distribs., 6 F.2d 1000, 1004 (2d Cir.1925) ("A cause of action which is given by a federal statute, if no specific provision is made by act of Congress for its survival, survives or not according to the principles of the common law.”).
Courts have also held that the principle that survivorship is determined as a matter of federal common law extends also to claims against the United States. See NEC Corp., 11 F.3d at 137, 139; see also Bilanow v. United States, 159 Ct.Cl. 93, 309 F.2d 267, 268 (Ct.Cl.1962) (apparently applying common law principles to conclude that action against the United States did not abate upon the plaintiff’s death).

. A claimant under the Program may file a written election to waive any award under the Program, and instead file a civil suit for damages, within ninety days after the entry of judgment under the Program and completion of any appeal. 42 U.S.C. § 300aa-21(a). Alternatively, a claimant may also forego an award under the Program in favor of a civil suit by filing a notice of intent to withdraw a petition under the Program if the petition is not decided within statutory time limitations. 42 U.S.C. §§ 300aa-l l(a)(2)(A)(ii), -21(b).

. While the federal common law was not addressed by the parties, both the Supreme Court and this court have held that we must apply the correct law to an issue properly raised even if the parties do not direct us to the correct legal principles. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); Forshey v. Principi, 284 F.3d 1335, 1356 (Fed.Cir.2002) (en banc).