157 T.C. No. 8

UNITED STATES TAX COURT

JOSEPH A. INSINGA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9011-13W.                    Filed October 27, 2021.

P filed with the IRS Whistleblower Office ("WBO") a claim for an award, naming multiple target taxpayers. The WBO denied the claim, and P appealed that determination to the Tax Court pursuant to I.R.C. sec. 7623(b)(4). P's claim as to two target taxpayers was still pending before the Tax Court when P died in 2021. Counsel for P filed a motion to substitute P's estate for P in order to continue to prosecute P's claim after P's death.

<u>Held</u>: The Tax Court's jurisdiction over a petition filed pursuant to I.R.C. sec. 7623(b)(4) is not extinguished by the death of the petitioner-whistleblower; P's claim survives his death; and P's estate has standing to be substituted as petitioner.

Andrew R. Carr, Caroline D. Ciraolo, Usman Mohammad, Jay R. Nanavati, and Bryan C. Skarlatos, for petitioner.

Patricia P. Davis, Eric R. Skinner, and Jadie T. Woods, for respondent.

OPINION

GUSTAFSON, Judge: This case is before the Court on a motion, filed pursuant to Rule 63(a),[1] to substitute the Estate of Joseph A. Insinga ("the estate") as petitioner in this case and to change the case caption. Respondent, the Commissioner of Internal Revenue, does not oppose the motion. We will grant it.

Background

Pursuant to section 7623(b)(4), petitioner Joseph A. Insinga filed on April 25, 2013, a timely petition in the Tax Court for review of an adverse determination of the IRS Whistleblower Office ("WBO") regarding his claims for an award. His claims and petition sought awards in connection with eight target taxpayers and 94 additional transactions. After substantial development of the case by cross-motions for partial summary judgment and motions to compel

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (26 U.S.C.), in effect at all relevant times.

discovery (described in our orders of July 27, 2016, and January 27, 2017), petitioner reported that he intended to pursue only his claims regarding two entities, and the parties have so stipulated.

Petitioner then filed an amended petition in September 2017, asserting only the two remaining claims. Since then the parties have filed and briefed cross-motions for summary judgment and have filed supplemental briefs on the impact on this case of Kasper v. Commissioner, 150 T.C. 8 (2018), and Van Bemmelen v. Commissioner, 155 T.C. 64 (2020).

Petitioner died on March 22, 2021. This case and the most recent cross-motions for summary judgment are still pending. The motion for substitution was filed on June 4, 2021, asserting that the probate court of the State of South Carolina, County of Beaufort, has issued to Amanda Gilmore a Certificate of Appointment to serve as personal representative for the estate, and asserting that as the decedent's successor, the estate should be substituted for petitioner (and that the case caption be accordingly changed to reflect the substitution) so that the estate may proceed in place of Mr. Insinga.

Discussion

I.     Jurisdiction

Congress granted to the Tax Court jurisdiction over whistleblower award determinations in section 7623(b)(4), which provides that "[a]ny determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." This statute thus confers jurisdiction "with respect to '[a]ny determination regarding an award'". Lacey v. Commissioner, 153 T.C. 146, 163 (2019) (citing Cooper v. Commissioner, 135 T.C. 70 (2010)). However, as the Commissioner acknowledges in his filings, "[s]ection 7623 and its legislative history are silent with respect to survivability of whistleblower claims."

Whether an appeal of a whistleblower's award determination to the Tax Court pursuant to section 7623(b)(4) survives the death of the petitioner-whistleblower is a question of first impression in this Court.[2] Rule 63(a) provides

_____

[2]Before the enactment of section 7623(b), claims arising under its predecessor statutes were evidently litigated on behalf of deceased claimants in the U.S. Court of Claims. See, e.g., United States v. Ramsay, 120 U.S. 214, 217 (1887) (allowing suit to obtain judgment for recovery of claim pursuant to the Act of June 30, 1864, ch. 173, sec. 179, 13 Stat. at 305, filed by the widow and legal heir, the "legal representatives of * * * [Mr. Ramsay's] personal estate"); Saracena

(continued...)

that "[i]f a petitioner dies, the Court, on motion of a party or the decedent's successor or representative or on its own initiative, may order substitution of the proper parties." But before ordering such a substitution, we must first ask whether we continue to have jurisdiction over an appeal filed pursuant to section 7623(b) after the petitioner-whistleblower who filed it has died.

In deficiency cases, which constitute most of the cases before this Court, "it is well settled that a petitioner's death does not divest this Court of jurisdiction over his income tax liability for years already in issue". Beatty v. Commissioner, T.C. Memo. 1980-168, 1980 Tax Ct. Memo LEXIS 414, at *7 (citing Nordstrom v. Commissioner, 50 T.C. 30 (1968), and Yeoman v. Commissioner, 25 T.C. 589 (1955)).[3] Our deficiency jurisdiction is based on a timely filed petition, see sec. 6213(a); and (as held by our predecessor, the Board of Tax Appeals) "that

[2](...continued)
v. United States, 508 F.2d 1333, 1334 n.1 (Ct. Cl. 1975) (hearing action brought under section 7623 by the administrator of the estate of a deceased man seeking an award).

[3]Similarly, as to death's non-effect on our jurisdiction over "innocent spouse" cases under section 6015, see Jonson v. Commissioner, 353 F.3d 1181, 1184 (10th Cir. 2003) ("[T]he Estate could perform the filing of the election under § 6015(c)"), aff'g 118 T.C. 106 (2002), and Fain v. Commissioner, 129 T.C. 89 (2007) (finding that a non-requesting spouse's right to intervene also survives death).

jurisdiction * * * continues unimpaired" after the petitioner's death,[4] because "the action is one which survives against * * * [the petitioner's] estate", Duggan v. Commissioner, 18 B.T.A. 608, 625 (1930);[5] see also Nordstrom v. Commissioner, 50 T.C. at 31-32 (citing Duggan v. Commissioner, 18 B.T.A. at 625, and Yeoman v. Commissioner, 25 T.C. 589, 593 (1955), in support of its holding that the Court's jurisdiction over a case continues unimpaired by the death of a taxpayer

---

[4]In a deficiency case, if the death of the petitioner deprived the Tax Court of jurisdiction, then the consequence would be dismissal of the case for lack of jurisdiction, leaving the IRS free to proceed with assessment and collection of the tax but without any adjudication of liability. See sec. 6201(a); cf. sec. 6213(c) ("If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a) [of sec. 6213], the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary"). If a deficiency case is dismissed for grounds other than "lack of jurisdiction", then the "decision of the Tax Court dismissing the proceeding shall be considered as its decision that the deficiency is the amount determined by the Secretary", under section 7459(d). There is no equivalent statute governing dismissals of whistleblower cases under section 7623(b).

[5]In Duggan v. Commissioner, 18 B.T.A. 608, 624-625 (1930), the Board of Tax Appeals characterized the deficiency case as the taxpayer's "appeal" from "the administrative determinations of deficiencies or liabilities asserted by the Commissioner", and it viewed the underlying administrative determination as an "action" (i.e., against the taxpayer) that survived the taxpayer's death; and indeed, as the Board of Tax Appeals held in Duggan, a deceased taxpayer's income tax liabilities can be assessed and collected from his estate. In the deficiency case, therefore, the Commissioner has his own interest in the survival of the case after the taxpayer's death. In the whistleblower case, on the other hand, only the estate of the petitioner-whistleblower has such an interest, and there is no "action against" the estate (as in Duggan) but only an action against the Commissioner.

and even though there is no personal representative appointed to act in the place and stead of the decedent).

The prerequisites to the Tax Court's acquiring jurisdiction in a section 7623(b) whistleblower case are the WBO's issuance to the whistleblower of a final determination and the whistleblower's filing of a petition.[6] See McCrory v. Commissioner, 156 T.C. __, __ (slip op. at 7) (Mar. 2, 2021) (holding that a preliminary award determination letter does not entitle a whistleblower to invoke our jurisdiction and citing Kasper v. Commissioner, 137 T.C. 37, 41 (2011), for the proposition that "[t]he jurisdiction of this Court is nevertheless dependent upon a finding that a 'determination' has been made"). We find (and the parties do not dispute) that these prerequisites were met in this case. Evaluating the prerequisites to our jurisdiction under section 7623(b) and our precedent for the other sorts of cases in our jurisdiction, we conclude that we continue to have jurisdiction over the petition upon the death of the petitioner-whistleblower. We consequently hold that the death of a petitioner-whistleblower who has filed a

---

[6]In a deficiency case under section 6213(a), not only the filing but also the timeliness of a petition are jurisdictional prerequisites. In a whistleblower case under section 7623(b), the U.S. Court of Appeals for the D.C. Circuit has held that timeliness is not a jurisdictional prerequisite. See Myers v. Commissioner, 928 F.3d 1025, 1036 (D.C. Cir. 2019) ("[section] 7623(b)(4) does not contain a 'clear statement' that timely filing is a jurisdictional prerequisite to the Tax Court's hearing the whistleblower's case"), rev'g and remanding 148 T.C. 438 (2017).

petition in the Tax Court that is pending at the time of his death does not extinguish our jurisdiction over the petition.

II.     Survival of the claim

        A.      Survival of Federal statutory claims generally

When a Federal statute does not specifically address survival rights, Federal common law provides the general rule that rights of action under Federal statutes survive a plaintiff's death if the statute is remedial, not penal. See Ex parte Schreiber, 110 U.S. 76, 80 (1884); see also United States ex rel. Hood v. Satory Global, Inc., 946 F. Supp. 2d 69, 81 (D.D.C. 2013) (holding that a claim arising under the False Claims Act survives the death of the relator-plaintiff). The Court of Appeals for the Federal Circuit has expressed this rule by holding that, in the absence of a statutory provision to the contrary, common law supplies a presumption in favor of the survival of a remedial right of action arising under a Federal statute. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1319 (Fed. Cir. 2013).

Various Courts of Appeals have applied a three-factor test to ascertain whether a statute is remedial or penal, examining: "(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the

public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." United States v. NEC Corp., 11 F.3d 136, 137 (11th Cir. 1993) (quoting First Nat'l Bank & Tr. Co. in Macon v. Flatau (In re Wood), 643 F.2d 188, 191 (5th Cir. 1980)).

### B. Remedial vs. penal purpose

No court has yet decided whether section 7623(b) has a remedial or a penal purpose. However, opinions addressing the treatment of claims arising under the False Claims Act ("FCA"), 31 U.S.C. secs. 3729-3733, are illuminating because such qui tam[7] actions involve the roughly analogous[8] circumstance of a "relator" who (like a whistleblower) brings information regarding illegal activity to the attention of the Government and, upon successful prosecution of the claim, shares in the recovery.

---

[7]"Qui tam is an abbreviation for qui tam pro domino rege quam pro seipso, which means 'he who as much for the king as for himself.' Historically, all qui tam actions have shared the common features of allowing private parties to initiate suit to enforce the laws in the government's stead and awarding victorious plaintiffs part of the recovery as bounty." United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 647 n.1 (D.C. Cir. 1994) (citation omitted).

[8]The analogy of the qui tam case is imperfect, since the qui tam relator may litigate the underlying case, whereas the tax whistleblower cannot litigate the target taxpayer's liability (and the Tax Court does not adjudicate that liability).

In NEC Corp., 11 F.3d at 139, the court held that a decedent-plaintiff's claim under the FCA was remedial and therefore survived his death. In so holding, the court determined that each of the three relevant factors weighed in favor of finding the statute remedial, as follows: (1) The purpose of the qui tam remedy under the FCA was to redress individual wrongs of the relator who (the court held) may suffer "substantial harm" by bringing the qui tam action.[9] (2) "[Q]ui tam provisions are intended to remedy, at least in material part, the harm suffered by the individual relator * * * rather than the public at large".[10] And (3) the fact that a relator's recovery depends upon and is proportional to "the extent to which the person substantially contributed to the prosecution of the action", see 31 U.S.C. sec. 3730, likewise weighs in favor of discerning a remedial

---

[9]The court in NEC Corp. acknowledged that "the government's recovery against a FCA defendant * * * [was] intended to compensate the government for damages suffered as a result of the defendant's actions", but held that the relator's qui tam award was intended to redress harms suffered by the relator in bringing the action (such as "severe emotional strain due to the discovery of his unwilling involvement in fraudulent activity" (where the relator had been an employee of the defendant), and "repercussions" such as "dismissal" from employment, and "the time and expense involved in bringing a qui tam action"). United States v. NEC Corp., 11 F.3d 136, 137-138 (11th Cir. 1993).

[10]Holding that "recovery * * * [ran] to the United States Government and the qui tam relator as compensation for damages", the court disagreed with the government's argument that recovery under the FCA ran only to the general public. NEC Corp., 11 F.3d at 138.

purpose, <u>NEC Corp.</u>, 11 F.3d at 137-139.  With respect to the FCA, the Federal courts have widely arrived at the same conclusion--i.e., that a claim brought by an FCA relator which is pending at his death survives and may therefore be pursued by his estate.  <u>See</u> <u>Satory Global, Inc.</u>, 946 F. Supp. 2d at 81 (observing that at the time of its opinion, all but one Federal District Court deciding this question had determined that an FCA claim survives the relator's death, and observing that since the time of the sole adverse opinion, <u>United States ex rel. Harrington v. Sisters of Providence in Or.</u>, 209 F. Supp. 2d 1085 (D. Ore. 2002), the Supreme Court had clarified that the FCA "serves dual punitive and remedial purposes" (citing <u>Cook Cty., Ill. v. United States ex rel. Chandler</u>, 538 U.S. 119, 129-134 (2003)).

    C.    <u>The purpose of section 7623(b)</u>

The 2006 amendments to section 7623(b)[11] evince an intent to encourage whistleblowers to provide information (by limiting the IRS's discretion to deny

---

[11]During the Senate Finance Committee hearing in which the whistleblower award regime prior to the 2006 amendments was discussed, the chairman of the committee spoke favorably about the use of whistleblowers to promote successful oversight in the context of the False Claims Act ("FCA"), 31 U.S.C. secs. 3729-3733, and he observed that one "loophole" in the FCA was its lack of applicability to tax matters.  <u>See</u> A Tune-up on Corporate Tax Issues:  What's Going on Under the Hood?:  Hearing Before S. Comm. on Finance, 109th Cong. 916 (2006) (statement of Charles E. Grassley, chairman of the S. Comm. on Finance).

certain awards).  See Smith v. Commissioner, 148 T.C. 449, 458 (2017).  The 2006 amendments also had the practical effect of increasing the amount of proceeds from which a so-called "mandatory" award under section 7623(b)(1) could be paid, by setting the "floor" for a mandatory award at the 15% threshold that the IRS previously imposed administratively and by increasing the ceiling for such awards to 30%.  See Staff of J. Comm. on Taxation, Technical Explanation of H.R. 6408, the "Tax Relief and Healthcare Act of 2006," as introduced in the House on December 7, 2006, at 88-89 (J. Comm. Print 2006).

Applying the three-factor test set forth in NEC Corp., 11 F.3d at 137-139, we conclude:  (1) Like the purpose of the FCA's qui tam remedy, the purpose of the award provisions of section 7623(b) is to redress individual wrongs of the whistleblower in bringing his claim (such as retaliation by his employer or professional ostracism) by compensating him for the harm he may incur by doing so.[12]  (2) Section 7623(b) is intended to provide a remedy to the whistleblower for

_____

[12]Of course, one obvious intended purpose of section 7623 (analogous to the purpose of the FCA) is to promote the tax collection function (and thus to benefit the Government) by bringing information about noncompliance to the attention of the IRS.  However, the means by which section 7623 does so, provided in subsection (b) (entitled "Awards to whistleblowers"), is to incentivize whistleblowers to risk the harms of providing such information and to compensate them for the harms they may suffer in doing so.  A whistleblower's anonymity in Tax Court proceedings is not guaranteed, see, e.g., Whistleblower 14377-16W v.

(continued...)

bringing his claim by providing mandatory compensation for claims where the collected proceeds meet certain statutory thresholds. And (3) the recovery due to the whistleblower under section 7623(b)(1), which "shall depend upon the extent to which the individual substantially contributed to such action", shows that the whistleblower's recovery is proportional to the harm he incurs in bringing his claim. Consequently, these three factors weigh in favor of holding (and we therefore do hold) that section 7623(b) has a remedial purpose, and therefore the petitioner-whistleblower's Tax Court petition survives his death. This conclusion is bolstered by the holding of the Court of Appeals for the Federal Circuit in Figueroa, 715 F.3d at 1319, that the starting point at Federal common law is a presumption that a remedial Federal cause of action survives where the statute does not contain an explicit statement to the contrary.

D. Regulatory guidance

Our holding is also consistent with the IRS's regulatory guidance with respect to claims pending before the WBO at the time of the whistleblower's

---

[12](...continued)
Commissioner, T.C. Memo 2021-113, supplementing 148 T.C. 510 (2017); and tax whistleblowers are especially vulnerable to harms such as professional stigma, retaliation, and economic duress, including current employment and future employability, especially given the absence of antiretaliatory provisions in section 7623, see Whistleblower 14106-10W v. Commissioner, 137 T.C. 183, 203 (2011).

death. See 26 C.F.R. sec. 301.7623-4(d)(4), Proced. & Admin. Regs. ("If a whistleblower dies before or during the whistleblower administrative proceeding, the Whistleblower Office may substitute an executor, administrator, or other legal representative on behalf of the deceased whistleblower for purposes of conducting the whistleblower administrative proceeding"). As the Commissioner points out, though this regulation became effective[13] after the date of petitioner's Tax Court petition,[14] if further proceedings were to occur before the WBO (in the event of a remand), the WBO would be bound by the regulation. And though the regulation is neither binding on us nor directly applicable to the issue we decide today, it lends some persuasive support to our conclusion.

III. Standing

Tax Court Rule 63(a) provides: "If a petitioner dies, the Court, on motion of a party or the decedent's successor or representative or on its own initiative,

---

[13]The prior regulation under section 7623, effective February 22, 2012, to August 11, 2014, authorized an "executor, administrator, or other legal representative [to act] on behalf of a deceased informant if, prior to the informant's death, the informant was eligible to file a claim for such reward under section 7623 and this section" but was silent with respect to substitution. See 26 C.F.R. sec. 301.7623-1(b)(3), Proced. & Admin. Regs. (Feb. 22, 2012).

[14]The regulation "applies to information submitted on or after August 12, 2014, and to claims for award under section 7623(b) that are open as of August 12, 2014." 26 C.F.R. sec. 301.7623-4(e), Proced. & Admin. Regs. Petitioner filed his petition on April 25, 2013.

may order substitution of the proper parties." No party disputes that the estate is the "proper part[y]" to substitute for petitioner. Consistent with our analysis above regarding survival of the petitioner-whistleblower's claim, we hold that the estate has standing to pursue that section 7623(b) claim. Accord Figueroa, 715 F.3d at 1320.

## Conclusion

For the foregoing reasons, we hold that the death of a whistleblower who has filed a petition in the Tax Court pursuant to section 7623(b) that is pending at the time of his death does not extinguish our jurisdiction over the petition. We further hold that petitioner's petition under section 7623(b), which was pending before us at the time of his death, survives his death, and that his estate has standing to pursue the claim. Finding that the estate is a proper party to substitute for petitioner pursuant to Rule 63(a), we will grant the motion to substitute the estate for petitioner and to accordingly change the caption in this case.

To reflect the foregoing,

An appropriate order will be issued.