DYK, Circuit Judge.
Stephanie Vino Figueroa, widow of Man-ny Figueroa and personal representative of his estate, filed a petition under the Vaccine Act seeking compensation for vaccine-related injuries suffered by Mr. Figueroa. See National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified at 42 U.S.C. §§ 300aa-l to -34 (“Vaccine Act”). The special master dismissed Ms. Figueroa’s petition, reasoning that because Mr. Figueroa had died of pancreatic cancer, a non-vaccine-related cause, Ms. Figueroa lacked standing to file a petition for injury compensation. The Court of Federal Claims affirmed. Ms. Figueroa appeals, arguing that Mr. Figueroa’s claim for vaccine-related injury compensation survived his death, and that the Act does not bar his personal representative from pursuing that claim on behalf of his estate. We agree that Mr. Figueroa’s injury claim survived his death and that Ms. Figueroa, the personal representative of his estate, has standing to file a petition. We therefore reverse.
Background
Mr. Figueroa received the flu vaccine on October 28, 2008. Within twenty days of the vaccination, Mr. Figueroa developed numbness in his face, impaired speech, and weakness. He was hospitalized and diagnosed with Guillain-Barré Syndrome (“GBS”), a debilitating and sometimes fatal nervous system disorder.
Because GBS is not listed on the Vaccine Injury Table, see 42 U.S.C. § 300aa-14(a), it is considered an off-Table injury, and requires proof that the vaccine caused the injury. See generally Althen v. Sec’y of HHS, 418 F.3d 1274, 1278 (Fed.Cir.2005). Nonetheless, “many flu [vaccine] causing GBS cases have been compensated under the Program.” Torday v. Sec’y of HHS, No. 07-372V, 2009 WL 5196163, at *3, 2009 U.S. Claims LEXIS 745, at *10 (Fed.Cl.Sp.Mstr. Dec. 10, 2009) (observing that “there is clearly a medical theory connecting the flu vaccine to GBS”); see also, e.g., Griglock v. Sec’y of HHS, 99 Fed.Cl. 373, 374 (2011) (noting that government did not contest that GBS resulted from influenza vaccination), aff'd, 687 F.3d 1371 (Fed.Cir.2012); Stewart v. Sec’y of HHS, No. 06-777, 2011 WL 3241585 (Fed.Cl.Sp.Mstr. July 8, 2011) (finding that petitioner successfully showed GBS resulted from influenza vaccine).
Mr. Figueroa had 36 months from the onset of his symptoms to file a petition under the Vaccine Act, that is, until approximately mid-November, 2011. See 42 U.S.C. § 300aa-16(a)(2). Howevex-, in February of 2010, Mr. Figueroa was diagnosed with pancreatic cancer; he died of pancreatic cancer in April of 2010. His widow, Stephanie Vino Figueroa, was named the personal representative of his estate. On November 1, 2010, Ms. Figueroa filed a petition seeking compensation for the vaccine-x-elated neui'ological injuries Mr. Figueroa suffei’ed prior to his death. Since the pancreatic cancer which caused Mr. Figueroa’s death was not vaccine-related, the petition did not seek a death benefit.
It is not disputed that the estate satisfied the i’equirements for a timely petition under section 300aa-16(a)(2), because the petition was filed less than thii'ty-six months after the onset of Mr. Figueroa’s GBS. Nor is it disputed that Mr. Figueroa could have filed the petition while alive (or that his repi'esentative could have filed it for him, had he been alive but disabled). However, the Secretax-y filed a motion to dismiss on the grounds that Ms. Figueroa “is not a proper petitioner under 42 U.S.C. § 300aa-ll(b)(l)(A).” Figueroa ex rel. Fi *1316 gueroa v. Sec’y of HHS, No. 10-750V, 2011 WL 2784586 at *1 (Fed.Cl.Sp.Mstr. June 22, 2011). The government argued that section 300aa-ll(b)(l)(A) provides an exclusive list of individuals who may file a petition, and that the personal representative of an individual who dies of non-vaccine-related causes is not among them.
That section provides:
any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine ... may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.
42 U.S.C. § 300aa-ll(b)(l)(A) (emphasis added). The special master agreed, concluding that “even though if Mr. Figueroa had filed his own action when he was alive, his estate may have received some amount of compensation,” Ms. Figueroa lacked standing to file a petition on his behalf, because she was not among the individuals listed in section 300aa-ll(b)(l)(A). Figueroa, 2011 WL 2784586, at *3-4.
Ms. Figueroa sought review of the special master’s decision, and the Court of Federal Claims affirmed. Figueroa v. Sec’y of HHS, 101 Fed.Cl. 696 (2011). The court acknowledged that the most relevant precedent, Zatuchni v. Sec’y of HHS, 516 F.3d 1312 (Fed.Cir.2008), had “express[ed] no view” on whether a petitioner in Ms. Figueroa’s situation would have standing. Figueroa, 101 Fed.Cl. at 697 (quoting Zatuchni, 516 F.3d at 1321). However, the court reasoned that section 300aa-11(b)(1)(A) permitted only three categories of claimants to file a petition in the first instance: (1) vaccine-injured persons themselves, (2) the legal representatives of minors or disabled persons, and (3) the legal representatives of the estates of persons who died of vaccine related causes. Id. at 697-98. Because Mr. Figueroa had died, the petition did not fall under category (1); because the cancer was fatal, rather than merely disabling him, the petition did not fall under category (2); and because the cancer was not vaccine-related, the petition did not fall under category (3). Id. at 698. The court concluded that section 300aa-ll(b)(l)(A) did not allow a petition seeking compensation for Mr. Figueroa’s vaccine-related injuries to be filed. Id.
Ms. Figueroa timely appealed. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f). Statutory interpretation is a question of law, and we review the Court of Federal Claims’ interpretation of the Vaccine Act de novo. Whitecotton v. Sec’y of HHS, 17 F.3d 374, 376 (Fed.Cir.1994), rev’d on other grounds, 514 U.S. 268, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995).
Discussion
I
This case requires us to address two questions reserved by this court in Zatuch-ni: whether the personal injury claim of a vaccine-injured individual who died from causes unrelated to the vaccine survives his or her death, and whether the personal representative of the estate has standing to file a petition under the Vaccine Act. See 516 F.3d at 1320-21.
In 1986, Congress enacted the Vaccine Act to address two primary concerns: first, “that the tort system was failing to adequately compensate persons injured from vaccinations,” and second, that there was too much vaccine-related tort litigation. Cloer v. Sec’y of HHS (Cloer I), 654 F.3d 1322, 1325 (Fed.Cir.2011) (en banc). Congress recognized that “a small but significant number” of people “ha[d] been gravely injured” by vaccines, “and they *1317 and their families have resorted ... to the tort system for some form of financial relief.” H.R.Rep. No. 99-908, at 4 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6345. Relief, however, was often unobtainable:
For the relatively few who are injured by vaccines—through no fault of their own—the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered.... [I]n the end, no recovery may be available. Yet futures have been destroyed and mounting expenses must be met.
Id. at 6, reprinted in 1986 U.S.C.C.A.N. at 6347; see also Lowry ex rel. Lowry v. Sec’y of HHS, 189 F.3d 1378, 1381 (Fed.Cir.1999).
In response, Congress established the National Vaccine Injury Compensation Program, see 42 U.S.C. § 300aa-10(a), “a no-fault compensation program ‘designed to work faster and with greater ease than the civil tort system,’ ” Bruesewitz v. Wyeth LLC, 562 U.S. -, -, 131 S.Ct. 1068, 1073, 179 L.Ed.2d 1 (2011) (quoting Whitecotton, 514 U.S. at 269, 115 S.Ct. 1477). The Program provides compensation for vaccine-related injuries, see 42 U.S.C. §§ 300aa-15(a)(1), (3),(4), and, “in the event of a vaccine-related death, an award of $250,000 for the estate of the deceased,” 42 U.S.C. § 300aa-15(a)(2). “Any person” injured by a vaccine may petition for compensation. 42 U.S.C. § SOOaa-lKbXlXA).[1]
It is not disputed that a claim for injury compensation under the Vaccine Act survives the injured person’s death and may be asserted by the personal representative of the estate in most situations, including (1) when the petition is filed before death by an injured individual who subsequently dies from non-vaccine-related causes; (2) when the petition is filed before death by a vaccine-injured individual who subsequently dies from vaccine-related causes, see Zatuchni, 516 F.3d at 1323; and (3) when the petition is filed after death by the estate of a vaccine-injured individual who dies of vaccine-related causes, see Griglock, 687 F.3d at 1374-75; Zatuchni, 516 F.3d at 1321. The only dispute is with respect to the situation here, when the petition is filed after the death of a vaccine-injured individual who died of non-vaccine related causes. Treating the petitioner differently in the present situation would be inconsistent with the fundamental objectives of the Act.
As this court, sitting en banc, has recognized, “[rjemedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose.” Cloer v. Sec’y of HHS (Cloer II), 675 F.3d 1358, 1362 (Fed.Cir.2012) (en banc) (citing Atchison, Topeka, & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561-62, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987)); see also, e.g., Peyton v. Rowe, 391 U.S. 54, 65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (citing the “canon of construction that remedial statutes should be liberally construed”). We have also recognized that the Act was meant “[t]o compensate injured persons quickly and fairly,” with “ ‘relative certainty and generosity’ of compensation.” Cloer I, 654 F.3d at 1325-26 (quoting H.R.Rep. No. 99-908, at 12-13, reprinted in 1986 U.S.C.C.A.N. at 6353-54).
In particular, as explained in our en banc decision in Cloer I, the Vaccine Act enshrines a principle of equal treatment *1318 for similarly situated vaccine-injured persons. See id. at 1340 (holding that the inequitable results following from a discovery rule precluded the application of such a rule to claims under the Act). It follows that similarly situated individuals “who receive the same vaccine on the same day, and who experience the same medically-recognized symptom of a vaccine-related injury shortly afterwards,” id., and who then suffer similar harm as a result, should be treated equally for purposes of standing to seek compensation.
The government’s reading of the Act would instead treat similarly situated parties quite differently, based on the unforeseeable “personal circumstances” of an independent illness or injury. Id. If two individuals received the same vaccine on the same day, experienced the same nonfatal complications, and sought identical compensation, but died of accidents within days of one another — one the day before filing a petition, and the other the day after — the estate of the person who had not yet filed could recover nothing, while the other estate would receive the maximum injury benefit allowable under the Act. This makes no sense. Moreover, if neither party filed a petition before dying, but the first died of an accident and the second died some time later of vaccine-related complications, the first person’s estate would recover nothing, while the second person’s estate would recover injury compensation and death benefits. Again, this makes no sense. It is illogical to attribute to Congress a purpose to deny some claimants compensation while allowing compensation for others who suffer identical vaccine-related injuries. At oral argument, the government could offer no rational reason why Congress would have chosen to distinguish between injury claims filed before and after death, or between the claims of those who died of a vaccine-related cause and those who did not. “The fact that a vaccine-related death followed a vaccine-related injury in a particular case does not alter the fact that certain expenses were incurred, wages lost, or pain and suffering endured in the interim.” Zatuchni, 516 F.3d at 1318.
II
The government contends, however, that despite the policies of the Act, its language compels a different result, arguing that the “plain language of the Act does not provide for the personal representative of the estate of an individual who died from a non-vaceine-related cause to file a claim for injury compensation.” U.S. Br. 6.
“Statutory construction ... is a holistic endeavor.” United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). We must consider the language of section 300aa-ll(b)(l)(A) in light of “the specific context in which' that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The ultimate question here is whether the estate of an individual who is injured by a vaccine, and thus qualified to recover compensation under the Vaccine Act, may file a petition after the individual dies from a cause unrelated to the vaccine. This requires the resolution of two underlying issues: (1) whether the injured individual’s cause of action survives his or her death, and (2) whether the personal representative of the injured individual’s estate may file a petition on that cause of action.
A
The language of the Act does not speak to the first question, but it is well-established that the background rule is that remedial claims survive the death of the injured party. Our law recognizes that “ ‘[t]he basic federal rule is that an action for a penalty does not survive, though *1319 remedial actions do.’ ” Phillips v. Shinseki, 581 F.3d 1358, 1367 (Fed.Cir.2009) (emphasis added) (quoting Faircloth v. Finesod, 938 F.2d 513, 518 (4th Cir.1991)); see also Ex parte Schreiber, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884). As discussed below, our sister circuits have likewise reached the conclusion that claims under remedial federal statutes survive, even in the absence of an express statutory provision. See generally 6 Moore’s Federal Practice § 25.11[3] (3d ed. 2012) (“Generally, under the federal common law, a federal claim survives the death of the party if the claim is remedial and not penal in nature.”). A petition for compensation under the Vaccine Act is clearly remedial. See Cloer II, 675 F.3d at 1362. Thus, the presumption is that it survives, in the absence of a statutory provision to the contrary.
The dissent’s rather startling response to this line of cases is that they were wrong to rely on this presumption of sur-vivorship, because a Supreme Court case from the turn of the century, Michigan Central Railroad Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913), rejected such a presumption in the context of the Federal Employers’ Liability Act of 1908 (“FELA”). However, our decision in Phillips and the decisions of other circuits that have found survivorship under federal statutes are fully consistent with Supreme Court precedent.
Under the old common law principles prevailing at the time of Michigan Central, personal injury actions abated upon the death of either the injured party or the tortfeasor. See generally Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043, 1044-47 (1965). In light of those common law principles, the Supreme Court held in Michigan Central that an injury action under a federal statute did not survive unless the statute expressly provided for survival. Mich. Cent., 227 U.S. at 67-68, 33 S.Ct. 192 (holding that FELA actions did not survive an injured employee’s death); see also St. Louis, Iron Mountain & S. Ry. Co. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915) (describing the 1910 amendment which overruled the result in Michigan Central). But during the last century, as states enacted legislation providing for survival, the common law rule changed. “[Vjirtually every state today ... has some form of survival statute, the exact provisions of which vary but the gist of which is to permit a personal injury action to continue after the death of either the plaintiff or defendant.” W. Page Keeton et al., Prosser & Keeton on Torts § 126, at 942 (5th ed. 1984) (“Prosser & Keeton”). Thus, “the principle of the survival of causes of action ... rather than being exceptional, has now become the rule in almost every common-law jurisdiction.” Cox v. Roth, 348 U.S. 207, 210, 75 S.Ct. 242, 99 L.Ed. 260 (1955). “[Wjhere a common-law principle is well established ... courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (quotation marks omitted). The legislation here — the Vaccine Act — was enacted in 1986, against this changed legal background.
In more recent opinions, the Supreme Court has recognized that in light of these changed background principles, remedial claims survive.[2] Cox v. Roth is nearly on *1320 point. While Cox considered the survival of claims after the death of the tortfeasor, its reasoning is equally applicable to the death of the injured party. In construing the Jones Act and FELA, which “contained no clause specifically providing for the survival of actions against deceased tortfeasors,” the Court recognized the new, more liberal state approach: “advancing civilization and social progress have brought 43 of our States to include in their general law the principle of the survival of causes of action against deceased tortfea-sors.” 348 U.S. at 208, 210, 75 S.Ct. 242. Thus, the Court held that the old common law rule against the survival of personal tort actions when the tortfeasor died would not be followed in interpreting a remedial federal statute. Id,[3]
Following the Supreme Court’s lead in Cox and other modern cases, our court and our sister circuits have repeatedly and appropriately held that remedial claims survive even where federal statutes fail to provide for survivorship. In closely analogous circumstances, we have held that claims survive and can be recovered by the deceased’s personal representative, even if the statute does not explicitly provide for such recovery.
In Phillips v. Shinseki, 581 F.3d 1358 (Fed.Cir.2009), a veteran died before judgment on his disability claim was entered in his favor. Id. at 1361. His daughter, acting as his personal representative, filed a claim for attorney fees under the Equal Access to Justice Act (EAJA). Id. EAJA provides in relevant part that “a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action_”28 U.S.C. § 2412(d)(1)(A) *1321 (emphasis added). The EAJA’s filing provision specifies that the “party seeking an award of fees and other expenses shall ... submit to the court an application ... which shows that the party is a prevailing party and is eligible to receive an award.” Id. at § 2412(d)(1)(B) (emphasis added). Though it was clear that the veteran, not his daughter, was the “prevailing party” for purposes of EAJA, see also Padgett v. Shinseki, 643 F.3d 950, 956 (Fed.Cir.2011), Phillips recognized that the EAJA fees claim survived, and “if the right to recover fees on an EAJA claim survives the death of the veteran, there is no reason to hold that the veteran must survive until the EAJA application is filed in order for the veteran’s estate to have the right to pursue an EAJA award,” in light of EAJA’s remedial purposes. Phillips, 581 F.3d at 1367; see also White v. United States, 543 F.3d 1330 (Fed. Cir.2008) (holding that even though estates are not among the beneficiaries enumerated in the Public Safety Officers Benefits Act, the estate of a claimant who died before her claim had been processed could collect the statutory benefit). Other circuits have reached similar conclusions about the survivorship of remedial claims.[4] There is no basis for reaching a different result here.
Indeed, our prior decisions under the Act similarly recognize that personal injury claims survive. As stated earlier, vaccine-related injury claims survive death in most situations, including (1) when the petition is filed before death by an injured individual who subsequently dies of non-vaccine-related causes, (2) when the petition is filed before death by an injured individual who subsequently dies of vaccine-related causes, and (3) when the petition is filed after death by the estate of an injured individual who dies of vaccine-related causes. If an injury claim survives in all these circumstances, it must survive here as well. Even if in situation (3), the survival of the injury claim could be inferred from the provision of the Act which allows a personal representative to file a petition on behalf of the estate of a person who dies of vaccine-related causes, see 42 U.S.C. § 300aa-ll(b)(l)(A), there is no statutory language that could be construed as providing for survivorship in the first two situations, where the estate is substituted on the injured person’s petition. Nor can survivorship in those two situations be inferred from the Federal Rules of Civil Procedure authorizing substitution; substitution is only permissible if the underlying claim is not “extinguished” on the party’s death. Fed.R.Civ.P. 25; see also Ct. Fed. Cl. R. 25(a)(1). Whether the claim is extinguished is a question of substantive law. See Charles Alan Wright & Arthur R. Miller, 7C Federal Practice and Procedure: Civil § 1954 (3d ed. 2012). Thus, injury claims necessarily survive the death of the injured party.
B
With respect to the second question— whether the personal representative of the injured individual’s estate may file a petition asserting the surviving cause of action — the government again maintains that suit is barred. The government contends that although a personal representative *1322 may be substituted on a pending petition filed by an injured individual who died of non-vaccine related causes, that representative cannot file a new petition after death, because the Act authorizes a representative to file a petition only on behalf of an injured individual who died of vaccine-related causes. This argument is based entirely on section ■ 300aa-ll(b)(l)(A), which states:
(b) Petitioners.
(A) Except as provided in subparagraph (B), any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section,[5] file a petition for compensation under the Program.
42 U.S.C. § 300aa-ll(b)(l)(A) (emphasis added). In the government’s view, this section establishes a rule that “any person who has sustained a vaccine-related injury” may file a petition while alive, but authorizes only the estates of those “who died as the result of the administration of a vaccine” to file petitions after the vaccine-injured person has died. Id. (emphasis added).
The government’s argument is inconsistent with both the structure and the text of the Act. The Act never expressly states that a personal representative may only bring suit if he or she represents a decedent who died of vaccine-related causes. While the Act specifies that certain persons “may not” file a petition, the personal representative of an individual who died of non-vaccine-related causes is not among them. See, e.g., 42 U.S.C. § 300aa-ll(a)(7) (persons who have received a civil settlement “for a vaccine-related injury or death ... may not file a petition under subsection (b) of this section for such injury or death”).
The existence of section 300aa-11(b)(1)(A) does, not suggest otherwise. As the dissent acknowledges, the interpretive canon expressio unius est exclusio alteris applies where “the term left out must have been meant to be excluded.” Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 81, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002).
The Supreme Court’s recent decision in Marx v. General Revenue Corp., 568 U.S. -, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013), is quite similar to the present case. There, the government argued that a provision for the award of costs in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3), impliedly mandated that costs not be awarded in other circumstances. Marx, 568 U.S. at -, 133 S.Ct. at 1175. The Court rejected this theory, stating that
[t]he argument of ... the United States depends critically on whether § 1692k(a)(3)’s allowance of costs creates a negative implication that costs are unavailable in any other circumstances. The force of any negative implication, however, depends on context. We have long held that the expressio unius canon does not apply “unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it,” and that the canon can be overcome by “contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion.” In this case, context persuades us that Congress did not intend § 1692k(a)(3) to foreclose courts from awarding costs under Rule 54(d)(1).
Id. (citations omitted). Here, similarly, the statutory context does not give rise to *1323 a negative implication. As in Marx, there is a relevant “background presumption,” which is a “highly relevant contextual feature.” Id. This is the presumption that remedial claims survive.
So, too, the Supreme Court has declined to apply the canon where Congress has “an obvious reason for selecting the [examples] that are addressed” in the statute, and omitting others. Setser v. United States, 566 U.S. -, -, 132 S.Ct. 1463, 1469, 182 L.Ed.2d 455 (2012). An obvious reason why Congress authorized “the legal representative of any person who died as the result of the administration of a vaccine” to file a petition in the first instance was to ensure access to the Act’s death benefit. See 42 U.S.C. § 300aa-15(2) (providing, “[i]n the event of a vaccine-related death, an award of $250,000 for the estate of the deceased”).
Death benefit claims and personal injury claims are distinct causes of action with distinct beneficiaries. A personal injury claim belongs to the injured person, and upon death, passes to the estate. See Prosser & Keeton § 126, at 942 (“The survival action ... is not a new cause of action [but] the cause of action held by the decedent immediately before or at death, now transferred to his personal representative.”). In contrast, a death benefit claim belongs not to the decedent, but to the decedent’s survivors or estate. Thus, statutes that authorize wrongful death actions typically include provisions specifying the person authorized to file suit (usually the personal representative), see generally Robert VanHorne, Wrongful Death Recovery: Quagmire of the Common Law, 34 Drake L. Rev. 987, 1010 (1984), as do federal workers’ compensation statutes, see, e.g., FELA, 45 U.S.C. § 51 (making employers “liable ... in case of the death of such employee, to his or her personal representative”). The Vaccine Act is no exception. Section 300aa-ll(b)(l)(A) simply authorizes the personal representative of a qualifying estate to sue for death benefits. In other words, “the legal representative of any person who died as the result of the administration of a vaccine” in section 300aa-ll(b)(l)(A) does not restrict who may file a petition for injury compensation, but rather establishes that if the estate is eligible for death benefits, the representative of the estate may file a petition on the estate’s behalf.
The legislative history of the Act demonstrates a direct relationship between the provision of a death benefit payable to the estate and the addition of the “legal representative” language to section 300aa-11(b)(1)(A). Of the two draft bills under consideration by Congress, S. 827 and H.R. 1780, only the Senate bill, which in large part became the basis for the final legislation, provided for a death benefit payable to the parents of the deceased, and for the recovery of expenses resulting from a vaccine-related injury that were incurred before death. S. 827 originally provided that:
(2) In the event of a death, compensation of not less than $300,000 and not more than $700,000 for the parents of the deceased (or other appropriate family member as determined by the court), plus such expenses as may have been incurred under paragraph (1) prior to death.
National Childhood Vaccine Improvement Act of 1985, S. 827, 99th Cong, (introduced April 2, 1985), § 2107(a)(2). S. 827 made no reference to suit by a personal representative, except in the case of a minor. See id. at § 2102(b). In the subsequent House bill, H.R. 5184, and likewise in the final House bill, H.R. 5546, (1) the death benefit was retained, but made payable to the estate, not the parents; (2) the provision regarding suit by the legal representative of the estate was added; and (3) the reference to recovery of expenses “prior to *1324 death” was omitted. These provisions of H.R. 5546 were then enacted into law. See National Childhood Vaccine Injury Act of 1986, H.R. 5546, 99th Cong., (1986) (enacted as Title III of Pub.L. 99-660, §§ 2111(b)(1), 2115(a)(2)). Thus, the final version of the Act represents a legislative choice to make the death benefit payable to the injured person’s estate upon suit by the personal representative, and the addition of the “representative” language to section 300aa-ll(b)(l)(A) was linked to the provision authorizing the death benefit payable to the estate. Moreover, the final legislation became deliberately silent as to the recovery of pre-death expenses, leaving such issues to the background rules of common law.
In construing an enacted law, the Supreme Court has often looked to the history of amendments made to the draft legislation. See, e.g., Green v. Bock Laundry Mach. Co., 490 U.S. 504, 524-26, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (recognizing that conferees had “access to all of Rule [of Evidence] 609’s precursors, particularly the drafts prepared by the House Subcommittee and Senate Judiciary committee,” and construing the final Rule in light of draft provisions that “deliberately were eliminated”); Schilling v. Rogers, 363 U.S. 666, 672-73, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) (construing the enacted statute in light of the omission of draft provisions included in a House bill); Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 390-91, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (construing a statute to reflect “continuity” between the Senate bill ultimately enacted and prior draft legislation). In particular, the deletion of the draft language linking recovery of pre-death expenses to the death benefit “strongly militates against a judgment that Congress intended a result that it expressly declined to enact,” see Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), ie., that pre-death expenses could only be recovered by the personal representative of the estate if the vaccine-injured individual died of vaccine-related causes.
Finally, other aspects of the Act’s legislative history make clear that Congress intended the Act to treat injured individuals inclusively and equitably, even after death. House Report No. 99-908, which “contains an ‘authoritative’ account of Congress’ intent” in drafting the Act, Bruesewitz, 562 U.S. at -, 131 S.Ct. at 1083 (Breyer, J., concurring), states that all personal representatives may file petitions on behalf of vaccine-injured persons:
Subsection (b) — Petitioners.—A petition may be filed by any person (or his or her legal representative) who has been injured by a vaccine listed in the Vaccine Injury Table.
H.R.Rep. No. 99-908, at 14 (1986), reprinted in 1986 U.S.C.C.A.N. at 6355 (second emphasis added).[6] In light of this inclusive language, it is unsurprising that the House Report never draws any distinctions between the personal representatives of injured individuals who died before or after filing, or between the injury compensation claims of those who die of vaccine-related causes or unrelated causes.
Conclusion
We conclude that the vaccine-related injury claims of an individual who dies of *1325 non-vaccine-related causes survive death, and that the decedent’s personal representative may file a petition to recover on those claims after death. We remand to the Special Master for proceedings consistent with this opinion.
REVERSED and REMANDED

. Both injury claims and death benefit claims are limited to a "vaccine-related injury or death” caused by a vaccine set forth in the Vaccine Injury Table. See 42 U.S.C. § 300aa-ll (c)(1)(A); see also 42 U.S.C. § 300aa-15(a); 42 U.S.C. § 300aa-33 (deHn-ing "vaccine-related injury or death”); 42 C.F.R. § 100.3 (Vaccine Injury Table, including, inter alia, the influenza vaccine).

. The dissent cites four cases to illustrate that the Supreme Court has "directly applied” the rule of Michigan Central many times, but the cited cases did not involve the survival of claims under federal statutes. For example, in Florida ex rel. Vars v. Knott, 308 U.S. 506, 60 S.Ct. 72, 84 L.Ed. 433 (1939), appellant *1320 Vars was denied an insurance agent’s license by a Florida official acting under color of Florida law. See State ex rel. Vars v. Knott, 135 Fla. 206, 184 So. 752, 753 (1938). Both parties agreed that Vars’ constitutional challenge to the Florida law abated with Vars’ death. 308 U.S. at 506, 60 S.Ct. 72. Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), also cited by the dissent, is also irrelevant. To the extent it addressed survivorship, it specifically ''declined] to address" whether, in light of the widespread adoption of state statutes abrogating traditional common-law limitations, courts should adopt a general maritime sur-vivorship rule. Id. at 36-37, 111 S.Ct. 317. The Court instead held narrowly that "a general maritime survival action cannot include recovery for decedent’s lost future earnings,” id. at 37, 111 S.Ct. 317, because "there is little legislative support for such recovery in survival,” id. at 35, 111 S.Ct. 317, and such "a remedy ... is disfavored by a clear majority of the States,” id. at 37, 111 S.Ct. 317.
The dissent also suggests that Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), reaffirmed the old common law rule. But Robertson did no such thing: in that case, it was undisputed that "the decision as to the applicable survivorship rule [wa]s governed by 42 U.S.C. § 1988,” id. at 588, 98 S.Ct. 1991, which directed federal courts to apply state law. Thus, as the Court observed, "the survivorship rules in areas where the courts are free to develop federal common law^ — without first referring to state law and finding an inconsistency — can have no bearing on our decision here.” Id. at 593-94 n. 11,98 S.Ct. 1991.

. See also Moragne v. States Marine Lines, Inc., 398 U.S. 375, 390-92, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (recognizing a general maritime wrongful death action because "numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death”); Van Beeck v. Sabine Towing Co., 300 U.S. 342, 347, 57 S.Ct. 452, 81 L.Ed. 685 (1937) (holding that consistent with "the rule in many of the state courts in which like statutes are in force,” a mother’s claim under the Merchant Marine Act of 1920 for compensation for the negligent death of her son did not abate at her death); Carlson v. Green, 446 U.S. 14, 23, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (holding that a Bivens action survives the death of the injured person because it is "a creation of federal law and, therefore, the question [of survival] is a question of federal law”).

. See United States v. NEC Corp., 11 F.3d 136 (11th Cir. 1993) (qui tam actions under the False Claims Act survive the death of the relator); Faircloth v. Finesod, 938 F.2d 513 (4th Cir.1991) (civil RICO claims survive to be filed by the administratrix of the injured party's estate); Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d 407 (7th Cir.1980) (Truth in Lending Act claims survive plaintiff’s death under federal common law), overruled on other grounds, Pridegon v. Gates Credit Union, 683 F.2d 182 (7th Cir.1982); Dellaripa v. N. Y., New Haven & Hartford R.R. Co., 257 F.2d 733 (2d Cir.1958) (a parent’s FELA claims for death benefits and compensation for a child’s injuries both survive the parent’s death).

. The requirements of subsection (c)(1) are not relevant here.

. The relevant statutory language — “any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table” — was the same at the time of the House Report. Compare 42 U.S.C. § 300aa-l 1(b)(1)(A) (2006) with National Childhood Vaccine Injury Act of 1986, H.R. 5546, 99th Cong., § 2111(b)(1) (1986) (enacted as Title III of Pub.L. 99-660).